UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATURALE & CO., et al.,<br>          Plaintiffs,<br><br>v.<br><br>CITY OF HAMTRAMCK, et al.,<br>          Defendants. | Case No. 21-cv-12451<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 12, 15)**

## I.     Introduction

Plaintiffs Naturale & Co. and Hamtramck Investment Group, Inc. (HIG) sued the city of Hamtramck and its building inspector, Bruce Eck, under 42 U.S.C. § 1983 for violation of their due process rights under the Fourteenth Amendment. ECF No. 1. Naturale and HIG claim that the city and Eck violated their substantive due process rights by refusing to issue certificates of occupancy after they completed renovations to their respective rental spaces, which they leased to operate retail marijuana facilities within Hamtramck. *Id*. Plaintiffs' complaint seeks injunctive relief, namely the issuance of certificates of occupancy for plaintiffs' leased premises, as well as damages from Hamtramck under *Monell*. *Id*.

Defendants filed separate motions to dismiss plaintiffs' complaint based on its failure to state a claim for relief as a matter of law.[1] ECF Nos. 12, 15. The motions have been fully briefed, the Court heard oral argument on them on June 16, 2022, and they are now ripe for determination. ECF Nos. 19, 21, 24, 26.

## II.   Factual Background

Naturale and HIG are Michigan corporations formed to operate retail marijuana establishments. ECF No. 1, PageID.2-3. Each leased space in Hamtramck for that purpose. *Id*. On November 16, 2020, the City of Hamtramck issued a signed Attestation 2-C form[2] to Naturale, confirming that Hamtramck did not have an ordinance banning retail marijuana establishments. *Id.*, ¶7. In reliance on that attestation form, Naturale applied for its retail marijuana license, incurring a nonrefundable $6,000 fee, engaged an architectural firm to create a facility plan in compliance

---

[1] Plaintiffs filed a motion for preliminary injunction which will be addressed in a separate order. ECF No. 2.

[2] This form is part of the application for a state license to operate a marijuana establishment. It requires the notarized signature of the clerk of the municipality verifying that the municipality has not adopted an ordinance prohibiting adult-use marijuana establishments, or the municipality has an ordinance allowing adult-use marijuana establishments and the applicant is not in violation of the ordinance. Mich. Admin. Code, R 420.5(d); M.C.L. 333.27205.

with the state's regulatory specifications, and submitted that plan to Hamtramck and the state's Marijuana Regulatory Authority (MRA). *Id.*, PageID.3. On December 20, 2020, Hamtramck approved Naturale's facility plan and issued a building permit, charging it a fee of over $1,000. *Id.* Upon receiving that permit, Naturale immediately began the demolition and buildout of its leased spaced. *Id.*

HIG formed in February 2021 with the intent to open a retail marijuana dispensary in Hamtramck. *Id.*, PageID.4. Hamtramck City Clerk August Gitschlag informed HIG representatives that if it obtained its attestation form by February 5, 2021, it would be grandfathered under the existing zoning ordinance permitting retail marijuana facilities in Hamtramck. *Id.* Gitschlag signed HIG's attestation form on February 4, 2021. *Id.* HIG also immediately applied for its retail marijuana license, incurring the $6,000 fee, engaged a different architectural firm to design its facility plan, and submitted the plan to Hamtramck for approval. *Id.*

On February 12, 2021, Hamtramck passed a new ordinance prohibiting all recreational marijuana facilities within the city outside of those already in operation or those who had already received a license to operate a marijuana retail establishment from the MRA. *Id.*; Hamtramck Ord. 2021-01. Despite the new ordinance, Hamtramck continued to issue

permits to Naturale to complete its buildout throughout the spring and summer of 2021. ECF No. 1, PageID.5. Eck notified Naturale's landlord in September 2021 that the city would not issue a certificate of occupancy, nor would it issue a written denial of the certificate of occupancy. *Id*., PageID.6, ¶ 30.

Meanwhile, Hamtramck approved HIG's facility plan and issued its building permit in July 2021, five months after the new ordinance banning future retail establishments was passed. *Id*., PageID.5, ¶ 23. The building permit, which required a $1970 fee, expressly noted that it was issued for "RENOVATION OF INTERIOR 3,000 SQ. FT. FACILITY TO ACCOMMODATE A MARIJUANA FACILITY." *Id*. HIG's leased premises passed final inspection in late August 2021, but in early September, a Hamtramck official phoned HIG's counsel to inform him that Hamtramck would not issue the certificate of occupancy because it was not licensed by the MRA.[3] *Id*., PageID.6, ¶ 27.

---

[3] To obtain a retail license from the MRA, an applicant must submit a certificate of occupancy for a specific location because the license is limited to that specific location and is not transferable. Mich. Admin. Code, R 420.5(d).

### III. Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "does not need detailed factual allegations" but must contain "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public

record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015)

### B. Substantive Due Process

Plaintiffs assert that their substantive due process rights, protected by the Fourteenth Amendment, were violated when the defendants refused to issue certificates of occupancy for their finished leased space in Hamtramck. To state a substantive due process claim in the context of land use regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action. *Tri-Corp Mgt. Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) (citing *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)).

Whether a property interest is constitutionally protected does not depend on the Constitution itself, but rather on "existing rules or on understandings that stem from an independent source, such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1991); *see also Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 (6th Cir. 1991). Courts apply an "entitlement test" to establish whether a party has a vested, protectable property right under state law. *Dorr v. City of Ecorse*,

305 F. App'x 270, 275 (6th Cir. 2008). "[A] protectable property right supporting a substantive due process claim exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his plan." *Id.* (quoting *Roth*, 408 U.S. at 577) (internal quotation marks omitted). Under Michigan law, the "possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure." *Id.* (citing *Dingeman Advertising v. Algoma Twp.*, 223 N.W.2d 689, 691 (1974)).

Both Naturale and HIG have alleged facts to support a vested, protectable property right in the certified occupancy of their leased spaces. Hamtramck issued Naturale's building permit under the old ordinance and continued to issue permits long after the new ordinance passed. Naturale began and completed construction under that permit. HIG alleges that it relied upon Hamtramck officials' assurances that it was to be grandfathered under the earlier ordinance to apply for its building permit. It also alleges that Hamtramck acted in furtherance of those assurances by issuing HIG's building permit five months after the new ordinance passed. HIG substantially relied on the city's assurances and the issued permits to undertake and complete its retail marijuana facility buildouts. Indeed, HIG's space received final approval after inspection before it received notice that

Hamtramck would not issue a certificate of occupancy. Both plaintiffs had valid building permits substantially relied upon to not only start, but to complete construction to convert their leased spaces into retail marijuana facilities.

Defendants argue that plaintiffs do not have a protected property interest in certificates of occupancy, relying on *Exclusive Brands LLC v. City of Garden City*, 2020 WL 5367331 (E.D. Mich. Sept. 8, 2020). That case is distinguishable from the case at bar because the applicant in that case was denied a special use permit for a medicinal marijuana facility. *Id*. The *Exclusive Brands* court ruled that the applicant had no constitutionally protected property interest in the special use permit because the special use permit application was subject to the complete discretion of the planning commission and city council. *Id*., at *11. Discretionary zoning decisions give rise to only unilateral expectations and thus do not permit a plausible substantive due process claim. *Id*. Unlike the plaintiff in *Excusive Brands*, who was denied a fully discretionary special use permit for the operation of a medical marijuana facility, plaintiffs here were denied certificates of occupancy, which, under Hamtramck's Certificate of Use and Occupancy ordinance, "*shall* be issued by the code official when the work covered by a building permit and/or site plan has been completed in

accordance with the permit, this subchapter, and other applicable laws and ordinances." Hamtramck Ord. § 150.008 (emphasis added). Because Hamtramck had no discretionary authority to deny plaintiffs' certificates of occupancy, *Exclusive Brands* is inapplicable.

Defendants also argue that *Brightmoore Gardens LLC v. Marijuana Regulatory Agency*, 975 N.W.2d 52 (Mich. App. 2021) controls here because it held that cities like Hamtramck are expressly entitled to opt out of the state statute permitting retail marijuana establishments. Plaintiffs do not argue to the contrary. They argue that they are not subject to the new ordinance based on their substantial reliance on the city's assurances that they were grandfathered under the prior ordinance.

Moreover, *Brightmoore Gardens* is factually distinguishable. The cities involved in that case, Detroit and Traverse City, refused to sign attestation forms pending the passage of new prohibitive ordinances. But unlike Detroit and Traverse City, Hamtramck not only signed the attestation forms, its officials also assured plaintiffs they would be grandfathered under the old ordinance and acted consistent with that assurance by continuing to issue building permits after the passage of the new ordinance.

Defendants cite a multitude of other inapposite cases, including ones that hold that a party has no due process rights relating to the possession

or cultivation of marijuana because it remains federal contraband. Those cases involve a plaintiff asserting a protected property interest in marijuana or a medical marijuana patient card or plaintiffs seeking the return of their confiscated marijuana. *See Hoover v. Mich. Dep't of Licensing & Regulatory Affairs*, 2020 WL 230136 (E.D. Mich. Jan. 15, 2020); *Krum v. Holder*, 2014 WL 11497804 (D.N.M. Mar. 19, 2014) (collecting cases) (smoking, using, possessing, or manufacturing marijuana is not a fundamental right protected by substantive due process). In citing these cases, defendants conflate plaintiffs' potential right to sell marijuana with plaintiffs' property right to certificates of occupancy for their leaseholds. The Michigan Regulation and Taxation of Marihuana Act (MRTMA), M.C.L. 333.27951 *et seq.*, authorizes the state, not municipalities, to issue a retail license if applicant satisfies all rules of the Act. M.C.L. 333.27959. Although municipality-issued certificates of occupancy for retail marijuana establishments are necessary prerequisites to state licensure, they are not determinative of whether the state of Michigan (by way of MRA) will ultimately issue those licenses. Plaintiffs' action against Hamtramck and Eck is to secure certificates of occupancy based on the completion of construction pursuant to valid building permits, not for the final approval to sell marijuana.

Based on plaintiffs' allegations of their substantial reliance, to their detriment, on Hamtramck's assurances and actions, the Court finds that plaintiffs have alleged a protected property interest in the certificates of occupancy sufficient to support a substantive due process claim. *See Nasierowski*, 949 F.2d at 897.

To prevail on a substantive due process attack on a local administrative action, a plaintiff must show that the municipality has been guilty of "arbitrary and capricious action" or that there is no rational basis for its action. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). Plaintiffs allege that Hamtramck and Eck were arbitrary and capricious in their refusal to issue certificates of occupancy to completed spaces in compliance with issued permits and approved site plans.

Defendants assert that Hamtramck's certificate of occupancy ordinance provided a rational basis, and, in fact, mandated its refusal to issue certificates of occupancy. The Hamtramck ordinance for certificates of use and occupancy requires issuance "when *the work covered by a building permit and/or site plan has been completed* in accordance with the permit, this subchapter, and other *applicable* laws and ordinances." Hamtramck Ord. § 150.008 (emphasis added). Defendants maintain that the February 2021 Marijuana ordinance (Hamtramck Ord. 2021-01) limiting

new dispensaries is an "applicable ordinance" precluding them from issuing a certificate of occupancy under § 150.008 because neither plaintiff had been issued a license from MRA.

This argument ignores the lessons of *Nasierowski* and *Dorr*. The *Nasierowski* court held that an owner's engagement in substantial acts taken in reliance and to its detriment, on representations from and affirmative actions by the municipality, securely vests the relying owner with a protected property interest under the prior ordinance, even if the owner's actions were taken after the passage of the new ordinance. *Nasierowski*, 949 F.2d at 897. Likewise, the court in *Dorr* determined that "possession of a valid building permit coupled with substantial reliance thereon . . . bestow[s] vested property rights to a *non-conforming* structure" and thus "a protected property interest in the certificate of occupancy." *Dorr,* 305 F. App'x at 275 (emphasis added).

Under these holdings, plaintiffs' substantial reliance on the issued building permits and other alleged conduct by Hamtramck would give them the rights they would have under the prior ordinance governing retail recreational marijuana facilities. In other words, plaintiffs' nonconforming leaseholds would be entitled to certificates of occupancy. The February 2021 ordinance was not an applicable ordinance under § 150.008 and

provided no justification for Hamtramck's refusal to issue certificates of occupancy for plaintiffs' leaseholds. Without authority to act under the applicable law, a trier of fact may conclude that a municipal action is without rational basis. *See TLC Development, Inc. v. Branford*, 855 F. Supp. 555, 558 (D. Conn. 1994).

In sum, plaintiffs have adequately alleged that they have constitutionally protected property interests of which they have been deprived through arbitrary and capricious municipal action. Plaintiffs' legally viable claims against defendants for violation of their substantive due process rights under the Fourteenth Amendment withstand defendants' motion to dismiss.

### C. *Monell* Claim against Hamtramck

A municipality sued under § 1983 is liable for damages only if the injury occurs pursuant to a municipal custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To satisfy the *Monell* requirements, a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. *Garner v Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). The municipal policy plaintiffs identify in the Complaint is the February 2021 ordinance. The injury here, the denial of certificates of occupancy, does not

flow directly from the passage of the new ordinance.[4] Thus, plaintiffs' *Monell* claim, as stated, fails as a matter of law and must be dismissed.

But *Monell* liability does not require the existence of an illegal official municipal policy or legislative enactment. A plaintiff can also establish municipal liability by proving "that an official with final decision-making authority ratified illegal actions; the existence of a policy of inadequate training or supervision; or the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F. 3d 462, 478 (6th Cir. 2013)) (internal marks and numeration omitted). Because the alleged facts make a *Monell* claim plausible, the Court will grant plaintiffs leave to amend this claim.

## IV.  Conclusion

For these reasons, defendants' motions to dismiss are **DENIED** as to Count I of plaintiffs' complaint and **GRANTED** as to Count II. Count II is **DISMISSED** without prejudice; however, the Court will permit plaintiffs to amend their complaint to state a *Monell* claim.

---

[4] In fact, many of plaintiffs' arguments in support of its motion for preliminary injunction and in opposition to defendants' motions to dismiss conflict with this assertion.

                                                s/Shalina D. Kumar
                                                SHALINA D. KUMAR
                                                United States District Judge

Dated: July 13, 2022